UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| SAMSON LAWRENCE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 18-00595 (ABJ) |
| DISTRICT OF COLUMBIA, *et. al.*, | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

Plaintiff Samson Lawrence has brought this action against defendants District of Columbia and Chief of Police Peter Newsham, alleging that the District, acting through the Metropolitan Police Department ("MPD"), exceeded the statutory 90-day time limit to commence an adverse action to terminate him, in violation of D.C. Code § 5-1031 and the Fifth Amendment to the Constitution. Am. Compl. [Dkt. # 3] ¶ 17. Plaintiff also alleges that the MPD discriminated against him on the basis of race, in violation of Title VII of the Civil Rights Act of 1944, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq. Id*. ¶ 19.

Defendant District of Columbia has moved to dismiss plaintiff's claims under 42 U.S.C. § 1983 and D.C. Code § 5-1031 for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that they are preempted by the Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-601, *et. seq.* Def.'s Mot. to Dismiss [Dkt. # 10] ("Def.'s Mot."). The District has also moved to dismiss plaintiff's Title VII complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that plaintiff failed to state a claim on which relief can be granted. *Id*. For the reasons stated below, the Court will grant defendant's motion to

dismiss as to plaintiff's D.C. Code § 5-1031 and constitutional due process claims but will deny the motion to dismiss as to the Title VII claim.

## BACKGROUND

Plaintiff was formerly employed as an officer with the MPD. Am. Compl. ¶ 3. On November 25, 2013, he was arrested in Maryland in connection with a domestic dispute with his wife. *Id*. ¶ 5. After plaintiff's arrest, MPD placed him on "non-contact status." *Id*. ¶ 7. He was indicted in Maryland state court on December 19, 2013 for attempted first-degree murder, attempted second-degree murder, first-degree assault, second-degree assault, and two counts of carrying a weapon with intent to injure. *Id.* ¶ 9.

On April 4, 2014, before the trial, MPD served plaintiff with a Notice of Proposed Adverse Action seeking to terminate his employment. Am. Compl. ¶ 10. Plaintiff requested an evidentiary hearing on the Notice. *Id*. The trial on the criminal charges took place in July, and on July 25, 2014, the court declared a mistrial because the jury was unable to reach a unanimous verdict. *Id.* ¶ 11. Plaintiff was re-tried, and on May 7, 2015, the jury found him not guilty on all charges in the indictment. *Id.* ¶ 12.

Within one week of the not guilty verdicts, MPD fully restored plaintiff to his position as an MPD officer. Am. Compl. ¶ 13. However, on January 16, 2016, MPD presented plaintiff with an Amended Notice of Proposed Adverse Action for Removal based upon the conduct underlying the Maryland indictment. *Id.* MPD held evidentiary hearings on April 7 and April 20, 2016, and on June 10, 2016, a three-member review board issued a recommendation to terminate plaintiff's employment. *Id.* ¶ 15. On June 24, 2016, plaintiff appealed the recommendation to the Chief of Police. *Id.* ¶ 16. On July 18, 2016, the Chief of Police confirmed the review board's decision, and plaintiff was terminated from the MPD in August 2016. *Id.*

Plaintiff filed its amended complaint on April 19, 2018. *See* Am. Compl. On July 6, 2018, the District of Columbia moved to dismiss the amended complaint pursuant to Rule 12(b)(1) for Counts I and II and 12(b)(6) for Count III. Def.'s Mot.; *see* Def.'s Mem. of P. & A. in Supp. of Def.'s Mot. [Dkt. # 10-1] ("Def.'s Mem.") at 4–6. Plaintiff opposed the motion on August 17, 2018, *see* Pl.'s Statement in Opp. to Def.'s Mot. [Dkt. # 12] ("Pl.'s Opp."), and the District of Columbia filed its reply on August 24, 2018. Def.'s Reply to Pl.'s Opp. [Dkt. # 13] ("Def.'s Reply").

**STANDARD OF REVIEW**

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

**I.      Subject Matter Jurisdiction**

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363

F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. District of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing

4

*Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

**ANALYSIS**

The complaint includes three claims against defendants: (1) plaintiff asserts that when MPD commenced an adverse action proceeding against him beyond the prescribed 90-day time limit, defendant violated D.C. Code § 5-1031; (2) he asserts that the statutory violation is also a violation of his constitutional due process rights; and (3) he asserts that defendant discriminated against him on the basis of his race when it terminated him because a person of another race in

5

similar circumstances was not fired. For the reasons set forth below, Counts I and II are dismissed, but Count III is not.

## I. The Court will dismiss Count I and Count II for lack of subject matter jurisdiction.

### A. Plaintiff's claim that defendant violated D.C. Code § 5-1031 is preempted by the CMPA.

Plaintiff argues that defendant District of Columbia acted unlawfully by failing to commence an adverse action proceeding against him within the 90-day period required by D.C. Code § 5-1031. The statute provides:

> [N]o corrective or adverse action against any sworn member or civilian employee of the Metropolitan Police Department shall be commenced more than 90 days, not including Saturdays, Sundays, or legal holidays, after the date that the Metropolitan Police Department knew or should have known of the act or occurrence allegedly constituting the case.

D.C. Code § 5-1031(a-1)(1). It continues:

> If the act or occurrence allegedly constituting cause is the subject of a criminal investigation by the Metropolitan Police Department or any law enforcement agency with jurisdiction within the United States . . . the 90-day period for commencing a corrective or adverse action under subsection . . . (a-1) of this section shall be tolled until the conclusion of the investigation. D.C. Code § 5-1031(b).

Plaintiff was indicted on December 19, 2013, and the prosecution concluded on May 7, 2015 when the jury found him not guilty. Am. Compl. ¶¶ 9, 12. Eight months later, on January 16, 2016, MPD issued its Amended Notice of Proposed Adverse Action for Removal. *Id.* ¶ 13. Thus, it is plain from the face of the complaint that the action was commenced well after the 90-day time limit prescribed in § 5-1031(a-1)(1) had expired. *See id*.

Defendant argues that plaintiff's claim under D.C. Code § 5-1031 should be dismissed because the claim is preempted by the CMPA, and preemption by the CMPA divests this Court of subject matter jurisdiction. Def.'s Mem. at 4.

6

The CMPA was designed to replace a "disjointed," "incredibly inefficient," and "often counterproductive" decentralized personnel system. *District of Columbia v. Thompson*, 593 A.2d 621, 634 (D.C. 1991). By enacting the CMPA, the Council of the District of Columbia sought to "replace the federal system which had previously controlled the District government's relations with its employees." *Hawkings v. Hall*, 537 A.2d 571, 574 (D.C. 1988). The CMPA establishes a merit personnel system that includes prompt handling of employee "grievances" and "adverse and corrective action." *See* D.C. Code §§ 1-616.51–.54. The CMPA applies to "all employees of the District of Columbia government," including employees of the MPD. *Id*. § 1-602.01(a).

The D.C. Circuit has concluded that the CMPA was "'intended . . . to provide District employees with their *exclusive* remedies for claims arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions.'" *Johnson v. District of Columbia*, 552 F.3d 806, 810 (D.C. Cir. 2008), quoting *Thompson*, 593 A.2d at 635; *Robinson v. District of Columbia*, 748 A.2d 409, 411 (D.C. 2000) ("[T]he CMPA is the exclusive remedy for a District of Columbia public employee who has a work-related complaint of any kind."). It was further intended "to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions – with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum." *Thompson*, 593 A.2d at 634.

If an employee is unhappy with the results of an adverse proceeding, the CMPA provides that an employee may appeal "an adverse action for cause that results in removal" to the Office of Employee Appeals ("OEA"). D.C. Code § 1-606.03(a); *see id.* § 1-616.52(b). And, it is only after the complainant has exhausted the administrative remedies provided by the CMPA that he may seek judicial review. *See id*. § 1-606.03(d) (providing for judicial review of OEA decisions); *Johnson*, 552 F.3d at 810.

The party claiming jurisdiction has the burden to establish that it exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). While the D.C. Circuit has not yet specifically resolved the question of whether the statutory exhaustion provision is a jurisdictional or nonjurisdictional prerequisite for the purposes of Article III and Rule 12(b)(1), it has observed that exhaustion is a jurisdictional requirement in D.C. Courts, and it had "no trouble" applying it in a case before it. *See Johnson*, 552 F.3d at 811 n.2. The D.C. Court of Appeals has decided that the CMPA includes a "clear legislative prescription" that deprives trial courts of jurisdiction. *See Robinson*, 748 A.2d at 411 n.4; *D.C. Metro. Police v. Fraternal Order of Police/Metro. Police Dep't Labor Comm.*, 997 A.2d 65, 77 (D.C. 2010) (noting that where CMPA's remedies are exclusive, the courts lack subject matter jurisdiction). And courts in this district have followed suit. *Payne v. District of Columbia*, 773 F. Supp. 2d 89, 101 (D.D.C. 2011) (noting that "[p]reemption by the CMPA divests the trial court – whether it be the Superior Court or this Court – of subject matter jurisdiction.").

Applying these precedents, the Court finds that plaintiff's claim is barred by the exhaustion requirement, whether it is jurisdictional or not. Plaintiff's claim is precisely the type that should have been appealed to the OEA. He contends that MPD did not adhere to the District's procedural requirements for disciplinary actions because it initiated the termination proceedings outside the 90-day period. *See* Am. Compl. ¶¶ 12–14. But he had the opportunity to challenge procedural requirements, "such as the requirement of timely notice," through the remedies provided for by the CMPA. *Washington v. District of Columbia*, 538 F. Supp. 2d 269, 278 (D.D.C. 2008), citing *Thompson*, 593 A.2d at 628 (discussing how procedural inadequacies related to an adverse action may be addressed under the CMPA).

Indeed, an employee succeeded in overturning a belated adverse action in *D.C. Fire & Med. Servs. Dep't v. D.C. Office of Emp. Appeals*, 986 A.2d 419, 423–24 (D.C. 2010). In this case, an emergency medical technician was terminated, and he appealed the case to the OEA on the grounds presented here: that the Emergency Medical Services Department commenced an adverse proceeding outside the 90-day limit in violation of § 5-1031(a). *Id.* at 423, 423 n.3. The OEA reversed the department's decision, and the department sought judicial review in state court. *Id.* at 423. The D.C. Superior Court upheld the order, and the D.C. Court of Appeals affirmed. *Id.* at 424, 426. As the complainant in that case did, plaintiff here should have appealed the termination decision to the OEA before seeking judicial review.

Thus, plaintiff has failed exhaust administrative remedies in connection with his claim of untimely commencement of an adverse action. While he states in his amended complaint that he appealed the termination decision to the Chief of Police, he does not state that he exhausted or even attempted to exhaust the administrative remedies set forth in the CMPA. Am. Compl. ¶ 16. It is only after he exhausts those administrative remedies that he can pursue judicial review, *see Thompson*, 593 A.2d at 628–29, and so defendant's motion to dismiss Count II will be granted.

### B. Plaintiff's claim under 42 U.S.C. § 1983 fails because it is predicated on a violation of D.C. statutory law, and so it is preempted by the CMPA.

Plaintiff also claims that the untimely commencement of the adverse action is a violation of his constitutional guarantee to due process, and therefore the District is liable under 42 U.S.C. § 1983. Am. Compl. ¶ 17. Defendant argues this claim should also be dismissed for lack of subject

matter jurisdiction because it is based solely on the defendant's alleged statutory violation, a claim that is preempted by the CMPA.[1]  Def.'s Mem. at 1.

The D.C. Circuit has held that when an alleged constitutional violation "is intertwined with a statutory one, and Congress has provided machinery for the resolution of the latter," the plaintiff must exhaust administrative remedies before a district court may hear the case.  *Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990); *see also Washington*, 538 F. Supp. 2d at 278 (granting defendant's motion to dismiss on due process claims that were predicated on a failure to adhere to requirements for disciplinary actions because plaintiffs had not exhausted their administrative remedies under the CMPA), quoting *Nat'l Treasury Emps. Union v. King*, 961 F.2d 240, 243 (D.C. Cir. 1992).  Plaintiff cannot use a constitutional hook to "reel [his] CMPA-precluded claims into this Court," *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 79 (D.D.C. 2007), and "[c]ouching the claim in constitutional terms will not immunize it from dismissal pursuant to the exhaustion requirement." *Washington*, 538 F. Supp. 2d at 278.

Because plaintiff's due process claim is predicated solely on the MPD's failure to commence an adverse action against plaintiff within the statutorily required 90-day period, and because that claim is preempted by the CMPA as explained in detail in Section I.A, plaintiff cannot allege a constitutional violation to establish jurisdiction.  Thus, the Court will grant defendant's motion to dismiss Count I.

---

1   Defendant also argues that claim should be dismissed because plaintiff does not allege any constitutional violation or violation of federal law as required to proceed under 42 U.S.C. § 1983. Def.'s Mem. at 5 n.1.  Contrary to defendant's argument, plaintiff has alleged a constitutional violation: a violation of due process as guaranteed by the Fifth Amendment.   Am. Compl. ¶ 17. Nonetheless, the Court finds that this claim is preempted by the CMPA, and thus the Court will dismiss the claim for failure to exhaust administrative remedies.

## II. Plaintiff states a claim for employment discrimination.

Plaintiff alleges he was unlawfully discriminated against on the basis of race in violation of Title VII, 42 U.S.C. § 2000e *et seq.* Am. Compl. ¶ 21. Plaintiff, an African American man, contends that his white counterpart – who was convicted in D.C. Superior Court for "similar behavior" as plaintiff – was retained as an employee while plaintiff was terminated. Am. Compl. ¶¶ 19–20. Defendant argues that these allegations are conclusory and insufficient to support his discrimination claim and accordingly this count should be dismissed pursuant to Rule 12(b)(6). Def.'s Mem. at 6.

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that he is a member of a protected class, he suffered an adverse employment action, and the unfavorable action gives rise to an inference of discrimination. *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002). However, to survive a motion to dismiss a plaintiff "does not need to plead each element of his prima facie case . . . but he must allege facts that, if true would establish the elements of each claim in his complaint." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 264, 281 (D.C.C. 2011) (internal quotation marks omitted); *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) ("[C]omplaints 'need not plead law or match facts to every element of a legal theory.'"). In addition, "[t]he Federal Rules of Civil Procedure do not require a claimant to set out the precise facts on which the claim is based . . . . 'Notice pleading' is sufficient." *Sinclair v. Kleindienst*, 711 F.2d 291, 293 (D.C. Cir. 1983).

In evaluating a motion to dismiss for failure to state a claim upon which relief can be granted, the Court is mindful that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," *Twombly*, 550 U.S. at 555, and that the notice pleading rules are "not meant to impose a great burden on a plaintiff." *See Dura Pharm.,*

*Inc. v. Broudo*, 544 U.S. 336, 347 (2005), citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513–515 (2002). "Because racial discrimination in employment is a claim upon which relief can be granted, . . . 'I was turned down for a job because of my race' is all a complaint has to say" to survive a motion to dismiss under Rule 12(b)(6). *Potts v. Howard Univ. Hosp.*, 258 Fed. App'x 346, 347 (D.C. Cir. 2007), quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000). Indeed, "courts in this Circuit have consistently recognized the 'ease with which a plaintiff claiming employment discrimination can survive a . . . motion to dismiss.'" *Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011), quoting *Rouse v. Berry*, 680 F. Supp. 2d 233, 236 (D.D.C. 2010).

Plaintiff states that he was fired from MPD for the behavior at issue in his indictment while his white counterpart, who was convicted for "similar" criminal behavior, was not fired. Am. Compl. ¶¶ 19–20. He asserts that the District of Columbia willfully discriminated against him when it did not afford him the same consideration that was afforded to his white counterpart. *Id.* ¶ 21. Defendant points out that plaintiff does not set forth specific facts about the nature of the charges the other employee faced, when the similar behavior allegedly occurred, whether the purported comparator faced any discipline, *etc*. Def.'s Mem. at 6. While all of this may be grist for a summary judgment motion, at this stage in the proceedings, plaintiff has alleged enough for the case to move forward: that he is an African American male; he was fired; and someone of a different race who faced similar charges, and was actually convicted of those charges, was not fired. *See Brown v. Sessoms*, 774 F.3d 1016, 1023 (D.C. Cir. 2014) (reversing dismissal of a discrimination claim where complaint "sufficiently [made] out" an inference of race and gender discrimination by alleging that plaintiff, a black female, was denied tenure while a white male employee won tenure when both "had similar records with regard to teaching and service");

*Winston v. Clough*, 712 F. Supp. 2d 1, 10 (D.D.C. 2010) (holding plaintiff stated a claim for racial discrimination by alleging that he was subject to discipline that "was motivated by [his] race and color" and "that other co-workers outside [his] protected class" engaged in the same behavior for which he was disciplined "yet none was suspended or disciplined for it").

Accordingly, defendant's motion to dismiss Count III is denied.

### III. Plaintiff's official-capacity claims against defendant Chief of Police Peter Newsham are duplicative of his claims against the District of Columbia.

Plaintiff sued Chief of Police Peter Newsham in his official capacity only. Am. Compl. ¶ 4(1). Defendant has moved to dismiss this claim as duplicative of plaintiff's claims against the District of Columbia. Def.'s Mem. at 7. Defendant also asserts that its motion should be granted as conceded because plaintiff did not respond to defendant's arguments concerning this claim. Def.'s Reply at 4.

Because the claims against Chief Newsham are duplicative of those against the District, the Court will dismiss them. *See Kentucky v. Graham*, 473 U.S. 159, 165–166 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"); *Holmes-Ramsey v. District of Columbia,* 747 F. Supp. 2d 32, 42 (D.D.C. 2010) (noting that "claims against [District] Officials in their official capacities are effectively claims against the District"). Summary dismissal of duplicative official capacity actions "is the overwhelming approach that has been taken by members of this Court, as well as the position taken by other courts." *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009), quoting *Price v. District of Columbia*, 545 F. Supp. 2d 89, 94 (D.D.C. 2008).

## CONCLUSION

For all these reasons, the Court will grant in part and deny in part defendant's motion to dismiss: Counts I and II will be dismissed, the claims against Chief Newsham will be dismissed, and the motion will be denied as to Count III.

A separate order will issue.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: March 8, 2019