UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMSON LAWRENCE, | ) |
| Plaintiff, | ) ***SEALED*** |
| v. | ) Civil Action No. 18-0595 (ABJ) |
| PETER NEWSHAM, *Chief of Police, et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

On March 16, 2018, plaintiff Samson Lawrence filed the complaint in this case. Compl. [Dkt. # 1] ¶ 1. He amended his complaint shortly thereafter, and the amended complaint states that "[t]his action arises from the wrongful termination of Plaintiff's employment as a District of Columbia Metropolitan Police Officer of the D.C. Metropolitan Police Department (MPD)." Am. Compl. [Dkt. # 3] ¶ 1.

On July 6, 2018, the District of Columbia filed a motion to dismiss, arguing that the Court lacked jurisdiction over the complaint and that plaintiff failed to state a claim upon which relief could be granted. *See* Def. District of Columbia's Mot. to Dismiss Compl. [Dkt. # 10] at 1. The motion was granted in part and denied in part; Counts I and II were dismissed, and all claims against Peter Newsham were dismissed, but Count III survived the motion to dismiss.[1] Order [Dkt. # 15] at 1.

---

[1] Because Newsham was dismissed from the case, Count III proceeds only against the District of Columbia.

Defendant has now filed a motion for summary judgment with respect to Count III, the remaining claim. See Def. District of Columbia's Mot. for Summ. J. [Dkt. # 55] ("Mot."). Plaintiff has opposed the motion, Pl.'s Opp. to Mot. [Dkt. # 61] ("Opp."), and the motion is now fully briefed. See Def. District of Columbia's Reply in Further Supp. of Mot. [Dkt. # 63-1] ("Reply"). Because the plaintiff has not come forward with evidence that would enable a jury to conclude that the stated reasons for his termination were not the actual reasons and that MPD intentionally discriminated against him, the motion will be **GRANTED**.

## BACKGROUND

Plaintiff is an African American male who began working for MPD in November 1990. Def. District of Columbia's Statement of Material Facts as to which there is no Genuine Dispute [Dkt. # 55-1] ("SOF") ¶ 1.[2] On May 4, 2010, plaintiff was involved in a domestic dispute with his then-wife, Betty Lawrence. Id. ¶ 25. Both plaintiff and his wife alleged that they were assaulted, and plaintiff acknowledged that he "cut up a couch the couple owned together" during the dispute. Id., citing Final Investigative Report IS # 10001606, Ex. D to Mot. [Dkt. # 54-1] at 2–3. The

---

2   Plaintiff's opposition did not include a separate document responding directly to defendant's statement of undisputed material facts. See generally Opp. Instead, plaintiff submitted a Statement of Genuine Material Facts in Dispute with his opposition, listing two facts as disputed. Id. at 3.

Local Civil Rule 7(h)(1) states that "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." As a result, and in accordance with the scheduling order in this case, Scheduling Order [Dkt. # 28] at 4–5 (ordering that "[t]he opposition to a motion for summary judgment must be accompanied by a separate document that responds directly and individually to the movant's material facts"), and Federal Rules of Civil Procedure 56(c) ("[a] party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record") and 56(e)(2) ("[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion"), the Court will treat the facts in defendant's statement of facts as undisputed.

2

MPD's Internal Affairs Bureau ("IAB") began an investigation, and "[o]n August 26, 2010, MPD IAB issued its final investigative report finding that a preponderance of evidence existed to support the charge of Conduct Unbecoming an Officer when Plaintiff cut up a couch in his home to intimidate his wife." *Id.* ¶ 26. Plaintiff appealed the proposed thirty-day suspension and the Chief of Police at the time, Cathy Lanier, granted the appeal on November 20, 2010 on the condition that plaintiff attend mandatory Metropolitan Police Employee Assistant Program sessions. *See* 2010 Chief of Police Appeal, Ex. E to Mot. [Dkt. # 54-2] ("2010 Appeal Decision") at 2 ("I have decided to ***grant*** your appeal. However, in light of the incredibly poor judgment you exercised in deciding to cut your couch with a knife to prove a point to your wife, I am directing that you continue to attend MPEAP."); *see also* SOF ¶ 27.

Unfortunately, that was not the last time plaintiff was accused of attacking his then-wife. On November 24, 2013, police received a 911 call from plaintiff's neighbor. SOF ¶ 28. The neighbor reported that "Betty Lawrence was at her home and bleeding from the back of her head after Plaintiff had struck her with a metal lamp fixture." *Id.* "Plaintiff's daughter[] also called 911 stating that her father was hitting her mother and police were needed." *Id.* ¶ 29, citing Addendum to the Final Investigative Report IS # 13-003307, Ex. H to Mot. [Dkt. # 54-5] ("Ex. H") at 5. "Betty Lawrence was treated at Fort Washington Hospital where she received five staples to close the wound on the back of her head and a cast for her fractured wrist." *Id.* ¶ 31, citing Ex. H at 4.

On November 25, 2013, Lawrence turned himself in to Prince George's County police. SOF ¶ 32. That same day, "MPD revoked Lawrence's police powers and placed him in non-contact status." *Id.* ¶ 33. Plaintiff was then indicted on December 19, 2013; he was charged with "Attempted First Degree Murder, Attempted Second Degree Murder, First Degree Assault, Second Degree Assault, and two counts of Carrying a Weapon with Intent to Injure." *Id.* ¶ 34. Shortly

thereafter, on January 7, 2014, Betty obtained a Final Protective Order ("FPO") against plaintiff; the FPO prohibited him from possessing a firearm or contacting Betty for one year. *Id.* ¶ 36.

The Department conducted its own internal investigation while the criminal case was moving forward. On February 12, 2014, the IAB issued its final report into this incident, Final Investigative Report #13-003307, Ex. G to Mot. [Dkt. # 54-4] at 2–6, and it sustained the allegations of misconduct against the plaintiff. SOF ¶ 40. In accordance with MPD procedures, the IAB transmitted the investigative report to the Disciplinary Review Division ("DRD"), *id.* ¶ 10, and on April 3, 2014, the DRD presented plaintiff with a notice proposing his termination and "charging him with two counts of Conduct that Constitutes a Crime and two counts of Conduct Unbecoming a Police Officer." *Id.* ¶ 41, citing Notice of Proposed Adverse Action, Ex. I to Mot. [Dkt. # 54-6] at 1–2.

On July 25, 2014, plaintiff violated the protective order issued by the District Court of Maryland for Prince George's County by contacting his wife. SOF ¶ 37. As a result of this violation, he was detained through the end of his trial. *Id.*

"Plaintiff's first trial ended in a mistrial due to a hung jury." SOF ¶ 38. "In Plaintiff's second trial on May 7, 2015, the jury found Plaintiff not guilty on all charges." *Id.* ¶ 39. Plaintiff returned to MPD after the acquittal, but he worked in the Court Liaison Division and did not exercise police powers. *Id.* ¶ 42.

On January 7, 2016, the MPD Disciplinary Review Division issued an amended notice, removing one of the "Conduct Unbecoming" charges. SOF ¶ 44, citing Amended Notice of Proposed Adverse Action, Ex. J to Mot. [Dkt. # 54-7] at 1. It convened an "Adverse Action Panel" in April 2016, and the panel "unanimously found Plaintiff guilty of all violations" after a fact-finding trial. *Id.* ¶¶ 45–46, citing Panel Findings of Fact and Conclusions of Law, Ex. K to Mot

[Dkt. # 54-8] ("2016 Panel Decision") at 33–34.  The panel "recommended termination for two charges:  the December 19, 2013 Indictment and the November 24, 2013 physical altercation in which Mrs. Lawrence sustained injuries to her head, neck, and hand."  *Id.* ¶ 46.  Plaintiff was issued a final notice of adverse action, *id.* ¶ 47, citing Final Notice of Adverse Action, Ex. L to Mot. [Dkt. # 54-9] at 2, and plaintiff's appeal was denied by Chief Lanier.  *Id.* ¶ 48, citing Chief of Police Appeal Decision, Ex. M. to Mot. [Dkt. # 54-10] ("2016 Appeal Decision") at 6.  Plaintiff's termination was effective as of August 26, 2016.  *Id.* ¶ 49.

Plaintiff filed two appeals with the Office of Employee Appeals, which affirmed MPD's decision both times.  SOF ¶¶ 50–52.  He also filed with the Equal Employment Opportunity Commission, which "closed Plaintiff's file on December 14, 2017, because 'CP [Charging Party] failed to establish credibility based on the severity of his indictment.'"  SOF ¶ 53, quoting EEOC Right to Sue, Ex. O to Mot. [Dkt. # 55-7] at 2.

## Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## Analysis

### I.   Title VII Framework

Count III of the amended complaint alleges that plaintiff's termination violated Title VII, 42 U.S.C. § 2000e, *et seq.*[3] Am. Compl. ¶¶ 19–21.

"A plaintiff may prove [a] Title VII discrimination . . . claim with direct evidence, for example through a statement that itself shows racial bias in the employment decision." *Nurriddin v. Bolden*, 818 F.3d 751, 758 (D.C. Cir. 2016). "Alternatively, a plaintiff may base [a] claim on circumstantial evidence under the familiar *McDonnell Douglas* burden-shifting framework." *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

---

3   Count III also mentions 29 U.S.C. § 623(a)(l) in its heading, and that statute says "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." But plaintiff has not explained why an age discrimination statute is implicated in this case, nor has either party raised it in any of the filings related to the motion to dismiss or this motion for summary judgment. Given that plaintiff has not made any factual allegations to support this claim, and he is not pressing it at this time, the stray reference to this statute does not change the Court's summary judgment analysis.

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). In order to make out a *prima facie* case of discrimination, a plaintiff must show that (1) he is a member of a protected class; (2) he suffered a cognizable adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015), citing *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002).

Once the plaintiff has established the *prima facie* case, the burden shifts to the defendant to articulate a legitimate and nondiscriminatory reason for its actions. *Nurriddin*, 818 F.3d at 758. If the employer comes forward with a legitimate and nondiscriminatory reason, the plaintiff must then show that the employer's stated reason was pretext for discrimination. *Id.*

"At the summary judgment stage, once the employer has claimed a nondiscriminatory reason for its actions, this burden-shifting framework disappears," "[w]e no longer consider whether plaintiff properly made out [his] *prima facie* case," and "[t]he one central inquiry that remains is whether a reasonable jury could infer . . . discrimination from all the evidence." *Nurriddin*, 818 F.3d at 758 (internal quotation marks and citations omitted). In other words, the operative question is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

A plaintiff alleging that his employer acted for an unlawful discriminatory reason may avoid summary judgment by identifying evidence from which a reasonable jury could find that the employer's proffered, lawful reasons for acting "were pretextual," *Carpenter v. Fed. Nat'l Mortg.*

*Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999), or, in other words, "unworthy of credence." *Burdine*, 450 U.S. at 256.  "Showing pretext, however, requires more than simply criticizing the employer's decisionmaking process." *Hairston v. Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014).  It is not sufficient to "show that a reason given for a job action [was] not just, or fair, or sensible," nor is it sufficient to challenge "the 'correctness or desirability' of [the] reasons offered." *Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1189 (D.C. Cir. 1996) (citations omitted).  Instead, the plaintiff must identify evidence from which a reasonable jury could find that the employer's stated reasons were "phony."  *Id.*

A plaintiff may support an inference that the employer's stated reasons were pretextual by providing evidence that:

> the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive.

*Walker*, 798 F.3d at 1092.  If a plaintiff is relying on a comparison to similar situated employees, as plaintiff is here, he "must demonstrate that []he and the alleged similarly-situated employee 'were charged with offenses of comparable seriousness,' and 'that all of the relevant aspects of [his] employment situation were nearly identical to those of the other employee.'"  *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115–16 (D.C. Cir. 2016), quoting *Burley v. Nat'l Passenger Rail Corp.,* 801 F.3d 290, 301 (D.C. Cir. 2015).  "Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses."  *Burley*, 801 F.3d at 301.

## II.     Employer's Stated Justification

The District maintains that plaintiff was terminated "for legitimate, nondiscriminatory reasons relating to his violent domestic assault and indictment." Mot. at 17. It cites the Adverse Action Panel's unanimous recommendation of termination for "Conduct Constitutes a Crime (Plaintiff's indictment) and one charge of Conduct Unbecoming (the physical altercation)." *Id.*, citing 2016 Panel Decision at 33–34. It proffers Chief Lanier's findings that "this serious and violent conduct is not suitable for a police officer and the public cannot be put at risk by Officer Lawrence," and it argues that "even though Plaintiff was criminally acquitted, his actions negatively impacted the reputation of the department because 'the public read the description of the incident, including how Officer Lawrence fled the scene, provided no assistance to his seriously injured wife, and violated the Court's protective order thereby being incarcerated for nine months.'" *Id.*, quoting 2016 Appeal Decision at 4. MPD acknowledges that plaintiff was acquitted of particular charges in his criminal trial in which the government was held to its burden to prove its case beyond a reasonable doubt, but emphasizes that the panel had its own evidentiary hearing and made independent findings of fact upon which it based its determination. *See id.* at 12, 17–18; *see generally* 2016 Panel Decision at 29–32.[4]

Moreover, the District asserts that "[t]he Panel was correct in determining that alternative sanctions would not deter such action in the future as Officer Lawrence was previously provided an alternative sanction to discipline and it did not deter him from committing the current offense." Mot. at 17–18, citing 2016 Appeal Decision at 6.

### III. The Comparator

In response, plaintiff submits that he was treated differently than a similarly situated employee who was also charged with a crime, and that the disparity demonstrates that MPD's

---

4   Chief Lanier adopted the fact-finding of the panel. *See generally* 2016 Appeal Decision.

actual motivation was discriminatory. This is the primary theory he advances for why the Department's reasons can be found to be pretextual.

Plaintiff compares himself to W.W., "a Caucasian male MPD detective." SOF ¶ 55.

Defendant states – and plaintiff does not dispute – the following about W.W.:

> W.W. is a Caucasian male MPD detective who worked on the Joint Terrorism Task Force, one of the most elite units for a detective to be assigned, working with highly sensitive cases out of the Federal Bureau of Investigation (FBI).
>
> W.W. had a stellar performance record; received several commendations; and is considered to be one of the top detectives at MPD.
>
> From September 1990 until June 2010, W.W. had no history of discipline.
>
> On June 26, 2010, after returning from an overseas assignment, W.W. was arrested for simple assault and driving under the influence (refusal) after he was observed pushing a man, placing him in a chokehold, and then driving away after an MPD Officer arrived.
>
> There were no injuries to any person as a result of the confrontation.

SOF ¶¶ 55–59 (citations omitted). "The DUI charge was later dropped criminally," "but still sustained administratively," *id.* ¶ 60, and W.W. was convicted criminally of simple assault and fleeing a law enforcement officer. *Id.* ¶ 61.

W.W. was not terminated, but he received a sixty-day suspension and was required to complete a thirty-day in-patient alcohol treatment plan. SOF ¶ 75.

### IV. Comparison of Plaintiff and W.W.

Plaintiff asserts that W.W. is similar to him because: (1) "Plaintiff and W.W. were both sworn police officers with police powers of investigation, apprehension and arrest"; (2) "Both Plaintiff and W.W. received final outcomes on their respective disciplinary charges by the same agency head, former MPD Chief Cathy Lanier"; (3) "Both Plaintiff and W.W. were charged with acts of violence toward a human being"; and (4) "Both Plaintiff and W.W. are members of the

10

same District of Columbia certified collective bargaining unit," which is why they have the same "core job duties and responsibilities."  Opp. at 11–12.

While much of that may be true, the commonalities are too superficial to be material. Plaintiff speaks at a high level of generality about job duties in his first and fourth assertion, but the D.C. Circuit has made clear that merely holding a generic position like "police officer" or "lawyer" does not necessarily mean that two people have similar job duties.  *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (finding it relevant that a supposed comparator "was lower in seniority," even though both were associates at a law firm, in determining that two people were not similarly situated).  And if it is plaintiff's theory that he and W.W. are so comparable that the discrepancy between discipline imposed is indicative of racial discrimination – and the Court notes that this is the primary theory that he has advanced – then he needs to present evidence supporting the claim that "all of the relevant aspects of his employment situation were nearly identical to those of the other employee."  *Burley*, 801 F.3d at 301 (brackets, quotation marks, and citation omitted).   Simply stating that all police officers have similar duties is insufficient to do so.

But even if one were to accept the proposition that a police officer is a police officer, plaintiff's other points of commonality do not advance his case.  Defendant points out that, in fact, Chief Lanier was not also the decision-maker in W.W.'s case.  *See* SOF ¶ 77 (During the relevant time, "Chief Lanier was out of the office so her authority was delegated to Assistant Chief Durham; thus, Chief Lanier was not directly involved in the settlement agreement, did not sign the agreement, and did not see the agreement before it was signed.").  Plaintiff has not disputed this fact.

11

And even if the two men were comparable with respect to their job duties and the disciplinary process, plaintiff's argument would still fail because the two men simply were not charged with similar underlying behavior. Though he acknowledges that attempted murder is a far more serious crime than simple assault, plaintiff asserts that the cases were nonetheless comparable because "the felony misdemeanor distinction" can be explained through "the complete discretion of the prosecutorial authority of jurisdiction involved." Opp. at 11. Plaintiff submits that "W.W. could have been charged with attempted murder for use of 'choke hold' upon his victim if the U.S. Attorney for the District of Columbia exercised discretion to do so." *Id.* at 12.

Speculating about what could have happened is not the same thing as pointing to evidence of a fact, and plaintiff's suggestion that the only thing differentiating him from W.W. was an exercise of prosecutorial discretion ignores the significant difference in the underlying facts. In W.W.'s case, no one suffered any injury. This can hardly be said about plaintiff's ex-wife.

Moreover, defendant found his conduct to be "violent, deliberate, and willful." 2016 Appeal Decision at 2. The Adverse Action Panel found that plaintiff pushed his then-wife into a refrigerator, "causing a beer bottle to fall from the shelf and break on the floor." 2016 Panel Decision at 31. "Following this incident," plaintiff "sprayed a can of disinfectant spray" in her direction. *Id.* As Betty tried to walk away, plaintiff pushed her face down, and then struck her "repeatedly in the back of the head" with a light fixture. *Id.* When she tried to call 911, plaintiff shoved her against a wall, and slid knives "alongside Ms. Lawrence's face." *Id.* As plaintiff has not disputed, Betty "received five staples to close the wound on the back of her head and a cast for her fractured wrist." SOF ¶ 31. And – as if that was not enough – plaintiff exacerbated the situation by violating the protective order entered against him while the criminal case was pending. 2016 Appeal Decision at 3.

While the Court does not wish to minimize W.W.'s case, which was itself serious and warranted sanctions, it is clear that his offense cannot fairly be compared to the assault that led to plaintiff's termination. It is undisputed that "[t]here were no injuries to any person as a result of the confrontation" W.W. was involved in. SOF ¶ 59. W.W.'s panel described the incident as follows: the victim "was pushed by [W.W.] and . . . restrained with his arms behind his back and the Detective's arm around his neck/chest area and placed against a vehicle." W.W. Adverse Action Panel Decision, Ex. Q to Mot. [Dkt. # 54-11] at 28. That is a far cry from striking someone repeatedly in the back of the head, restraining them when they tried to call for help, and sliding knives along their face, causing lacerations and broken bones. Even a cursory overview of the cases makes it clear: no reasonable jury could find that the two were charged with "offenses of comparable seriousness." *Wheeler*, 812 F.3d at 171.

Plaintiff's second argument as to why the explanation for his termination should be found to be pretextual is that defendant should not have taken his prior disciplinary history into consideration. Plaintiff asserts that MPD policy "provides that a personnel adverse action involving [a] penalty less than removal and is three (3) years old [should have been] be purged from Plaintiff's temporary personnel file," Opp. at 9, and explains that the first disciplinary action involving Betty Lawrence was "more than three (3) years old." *Id.* at 10. But plaintiff has failed to explain why this is evidence of pretext,[5] rather than a direct attack on the correctness of the decision. *See* Opp. at 9–10 (arguing that consideration of whether plaintiff could be rehabilitated

---

5   The Court has already explained why W.W. was an improper comparator. But insofar as plaintiff implies that W.W. was treated better on the rehabilitation factor, the argument is factually inapt, because plaintiff has provided no evidence that defendant evaluated W.W. in a different manner. To the contrary, defendant failed to dispute that "[f]rom September 1990 until June 2010, W.W. had no history of discipline." SOF ¶ 57.

"is a mandatory Douglas Factor").[6] "Showing pretext . . . requires more than simply criticizing the employer's decisionmaking process." *Hairston*, 773 F.3d at 272.

Plaintiff's argument that the *Douglas* factors were improperly weighed is similarly a challenge to "the 'correctness or desirability' of [the] reasons offered." *Fischbach*, 86 F.3d at 1189 (citations omitted). Even if consideration of the previous disciplinary action was technically barred by MPD policies, "the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers," *id.*, and plaintiff has presented nothing to indicate that defendant's belief was not both genuine and reasonable. *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005).[7] As a result, no reasonable jury could infer – especially in the absence of any other direct or indirect evidence of racial animus – that Chief Lanier cited plaintiff's prior discipline as a pretext for terminating him because of his race.

---

[6] The *Douglas* factors are used by MPD as "a guide in assessing aggravating or mitigating factors to help determine appropriate penalties." SOF ¶ 6; *see generally Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

[7] While there were more than three years between the two investigations, the assault took place on November 24, 2013, SOF ¶ 28, while plaintiff's appeal related to the first incident was granted on November 20, 2010. 2010 Appeal Decision at 1. The second incident came three years and four days after the 2010 decision, so the fact that the Chief, who had been involved both times, had concerns about the utility of a lighter sanction can hardly be characterized as unreasonable, and there is no reason to conclude they were not genuine.

## CONCLUSION

Plaintiff has not come forward with evidence to show that the proffered non-discriminatory reason for his termination was merely a pretext for discrimination. Therefore, defendant's motion will be **GRANTED**.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 2, 2022